**F I L E D**
                                                        **United States Court of Appeals**
                                                                **Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FEB 11 2003**

**TENTH CIRCUIT**

**PATRICK FISHER**
         **Clerk**

UNITED STATES OF AMERICA,

      Plaintiff - Appellant,

v.

SERGEY G. NOVITSKY,

      Defendant - Appellee.

No. 02-1310
D.C. No. 01-CR-291-WM
(D. Colorado)

### ORDER AND JUDGMENT[*]

Before **KELLY**, **PORFILIO**, and **BRISCOE**, Circuit Judges.

      The United States appeals from an order in the United States District Court for the

District of Colorado granting Defendant Sergey Novitsky's motion to suppress a firearm

seized and a statement made during an arrest in which a police officer used a twist hold

to rouse him from a parked car. The Government contends the district court erred

because the officers acted reasonably and within the scope of their "community

caretaking" duties in applying the twist hold. Because we believe the district court

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

properly held the police officer's use of the twist hold unreasonable and granted Defendant's motion to suppress, we affirm.

Shortly before 2:00 p.m. on June 9, 2001, the Aurora, Colorado police department received a "man down" call, requesting a check on the welfare of an apparently unconscious man leaning out of a car parked in a YMCA parking lot. Officers Michael Wortham and Paul Marshall arrived at the scene and observed a man, seemingly unconscious, hanging out of an open front passenger door. As they approached, the officers noticed another man, later identified as Defendant, lying in the back seat in a fetal position on his left side with his feet towards the open door.

While Officer Marshall remained near the rear passenger door of the car, Officer Wortham roused the man in the front seat, who smelled of alcohol, slurred his speech, and had difficulty standing. After assisting him out, Officer Wortham frisked the passenger and set him down on the pavement in front of the car. Officer Wortham then awoke Defendant by tapping on the window and directed him to get out of the car. Although the car smelled of alcohol, Officer Wortham did not know whether Defendant was intoxicated.

Defendant reached up with his right hand as though to grasp the car door and help himself out. As he did so, Officer Wortham grasped Defendant's hand in a "twist lock" also known as the "escort" or "pain compliance" position, which he applied primarily to control Defendant's actions and to assist him out of the car.

As described by Officer Wortham, the pain compliance hold is an arrest control technique taught at the police academy in which an officer grasps an individual by the hand and twists to tighten up the arm. The hold permits the officer to twist the arm further if an individual begins to fight or otherwise resists. According to Officer Wortham's testimony, the twist hold divides the individual's attention: "[t]he mind starts thinking about the pain in the arm instead of what they are going for or what they are doing . . . [t]hat way you can basically distract them and get them out of the vehicle without having further problems." Once the twist hold is applied, a person would not be able to walk away. Because in this case Defendant did not resist, Officer Wortham did not apply pressure beyond the basic twist lock position. He did not have any evidence or suspicion that Defendant had committed a crime, that he was armed, or that he posed a threat to the officers' safety.

As Defendant got out of the car, Officer Wortham began to turn him around to perform a pat-down search. Almost immediately, the officer observed a handgun in Defendant's right front pocket. Officer Wortham yelled "gun," and Defendant exclaimed, "It's a toy, it's a toy." A loaded Smith & Wesson .44 caliber pistol was removed from Defendant's pocket. The district court found Officer Wortham discovered the weapon upon turning the Defendant around to conduct the pat-down search, not afterward.

The officers issued Defendant a summons for carrying a concealed weapon and released him. On June 26, 2001, while in county jail and being interviewed on unrelated charges, Defendant admitted that he had a prior felony conviction and that he had been in possession of a firearm on June 9, 2001.

Defendant was charged in a one count indictment with felon in possession of a firearm, a violation of 18 U.S.C. § 922 (g). Defendant moved to suppress the weapon on Fourth Amendment grounds. After a motions hearing, at which the Government offered the testimony of an agent not present when the gun was discovered, the district court denied Defendant's motion.

At trial, Officer Wortham testified that utilizing a procedure he considered "standard," he applied the twist hold as Defendant exited the vehicle. Upon motions by both parties, the court granted a mistrial, calling for a re-examination of the suppression issue to consider whether Officer Wortham reasonably applied the pain compliance hold. After a subsequent evidentiary hearing, the district court granted Defendant's motion to suppress, finding Officer Wortham acted unreasonably in using the twist hold to draw Defendant out of the vehicle and turn him around for a pat-down. The court suppressed the firearm, as well as Defendant's "it's a toy" statement, as direct and immediate fruits of the illegal seizure.

We review a district court's ultimate determination of Fourth Amendment reasonableness de novo, **United States v. Holt**, 264 F.3d 1215, 1219 (10th Cir. 2001).

- 4 -

We accept and are bound by the court's factual findings unless clearly erroneous and view the evidence in the light most favorable to those findings.  *Id.*

This case is analyzed under the framework of *Terry v. Ohio*, 392 U.S. 1, 21 (1968).  Under *Terry*, a police officer in certain circumstances may detain a person for an investigation on less than probable cause and, if appropriate, conduct a protective search for weapons.  *Id.*  The police may even "have occasion to seize a person . . . in order to ensure the safety of the public and/or the individual, regardless of any suspected criminal activity."  *United States v. King*, 990 F.2d 1552, 1560 (10th Cir. 1993).  To determine reasonableness, a court asks whether the officer's action is "justified at its inception" and "reasonably related in scope to the circumstances which justified the inference in the first place."  *Terry*, 392 U.S. at 20.

To justify a detention, a "police officer must be able to point to specific and articulable facts which, taken together with rational interferences from those facts, reasonably warrant that intrusion."  *Id.* at 21.  A protective search is justified at its inception if the officer "harbor[s] the articulable and reasonable suspicion that the person is armed and dangerous."  *King*, 900 F.2d at 1557.  The court employs an objective standard in reviewing the propriety of the use of a forceful technique, asking "would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate."  *Terry*, 392 U.S. at 21-22 (*citing* *Beck v. State of Ohio*, 379 U.S. 89, 96-97 (1964)).

The Supreme Court has recognized that police officers are permitted and expected to carry out "community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *King*, 900 F.2d at 1560 (internal quotations omitted). In this case, the report of a "man down," coupled with the discovery of two people asleep or passed out in a car, authorized the officers to check their condition. Defendant concedes the officers properly roused him and ordered him out of the vehicle. The parties agree the narrow issue presented in this case is whether Officer Wortham acted reasonably in applying the twist hold to Defendant as he removed him from the car.

Although the district court found the initial stop justified under *King*, it held the use of a control hold in this case was unreasonable. The court quoted at length the officers' cross-examination testimony, including their "no" responses to questions about whether they had evidence or suspected a crime had been committed, that Defendant was engaged in criminal behavior, or that he posed a threat to their safety. The court noted Officer Wortham placed Defendant in a control hold with the intent of performing a pat-down search.

Relying on our statement in *King* sanctioning police officers, in certain circumstances, to lawfully seize a person "regardless of any suspected criminal activity," *id.*, the Government maintains the twist hold was reasonable. First, the Government argues the hold was neither painful nor embarrassing and was a minor intrusion on

Defendant's liberty. Although designed as a control grip for officers' safety, the pain compliance hold in this case "was actually just basically helping [Defendant] out," indeed, it "objectively enhanced his well-being." Second, the Government asserts the twist hold was "reasonably related in scope" because Officer Wortham, with some concern for his safety, sought to limit Defendant's movement and prevent "any quick movements to grab for a weapon or that type of thing."

This case, the Government argues, involving a pressure-free "handshake," is easily distinguishable from *King*, where the officer drew her weapon, pointed it at defendant, and threatened to shoot him if he did not exit the vehicle. Finally, the Government urges the district court incorrectly relied on Officer Wortham's intent to perform a pat-down search in concluding his use of the twist hold was unreasonable. Intent, according to the Government, is irrelevant for two reasons: (1) the pat-down search never occurred because Officer Wortham spotted the gun before he had a chance to frisk Defendant, and (2) subjective intentions do not taint what is otherwise constitutional police conduct.

We disagree. As Officer Wortham testified, and the district court correctly noted, there was no evidence a crime had occurred, that Defendant had engaged in criminal activity, or that he posed a threat to the officers' safety. Defendant did not resist Officer Wortham in any way; in fact, his demeanor was apparently benign, as he had begun to help himself out of the car when the twist hold was applied. That the use of a pain

compliance hold to extract an individual from a car was a standard procedure, that the officers' had, as usual, a general concern for their safety, and that the pressure applied to Defendant was minimal, do not suggest an officer of reasonable caution would believe the use of the twist control grip was warranted in this case.  Further, although the court noted Officer Wortham's intent to conduct a pat-down search, its Fourth Amendment violation finding was based upon the absence of Defendant's criminal activity, resistence, or threat, not upon the officer's intentions.

**AFFIRMED**.

ENTERED FOR THE COURT

John C. Porfilio
Senior Circuit Judge